[Civ. No. 12636. Second Dist., Div. Three. Jan. 29, 1942.]

EDWIN F. COX, Respondent, v. TYRONE POWER ENTERPRISES INCORPORATED (a Corporation) et al., Appellants.

Stephen Tighe for Appellants.

Joseph L. Fainer and Thomas Connell for Respondent.

SCHAUER, P. J.—This is an intersection automobile collision case, tried before a jury, in which the plaintiff was

awarded a verdict of $1,250 for injuries which included multiple fractures of the right knee cap, and in the treatment of which injuries plaintiff had incurred hospital and medical expenses in the aggregate sum of $811.

Both plaintiff and defendants moved for a new trial, plaintiff's motion being limited by his notice of intention to "the issue of damages alone" on the sole ground of insufficiency of the evidence to justify the verdict, while defendants' motion was for a retrial on all issues and was predicated on several grounds including that of insufficiency of the evidence.

The only ruling on such motions was pronounced orally and entered in the clerk's minutes in writing in the following language: "Said motions being presented and argued on all of the grounds set forth in the notices of intention to move for a new trial, it is ordered that plaintiff's motion for a new trial be granted upon the grounds of inadequate damages; that defendants' motion for a new trial be denied." Such entry in writing was made the day the ruling was pronounced.

Defendants appeal from the judgment and from the order denying defendants', and granting plaintiff's motion for a new trial; they advance four propositions as grounds for reversal:

"I. There is no substantial evidence that defendant driver was negligent and on the contrary the preponderance of evidence establishes the negligence of plaintiff.

"II. The court erroneously instructed the jury under the evidence in this case that a left turn signal was required during the last fifty feet of travel.

"III. The court erred in granting plaintiff's motion for a new trial upon the issue of damages alone (if that was the intended effect of the order).

"IV. There is no authority in law for granting plaintiff's new trial motion in this case by an oral order of the court entered in the minutes."

We discuss such propositions in the order in which they are presented but find none of them sustainable.

## I.

### SUFFICIENCY OF THE EVIDENCE TO SUSTAIN THE VERDICT ON THE ISSUES OF NEGLIGENCE AND OF CONTRIBUTORY NEGLIGENCE.

■ ■ The collision occurred in the early afternoon of March 16, 1939, when plaintiff, operating his automobile in a westerly direction on Pico Boulevard, a "through highway"

(Vehicle Code, § 82.5) arrived near the center of the intersection of that highway with Beverly Glen Boulevard, a public street, at the same time that defendant Anne L. Power, driving the defendant corporation's automobile with its consent, in a southerly direction on Beverly Glen, also reached such point. The briefs seem to assume that defendant Power (hereinafter referred to as defendant) was endeavoring to execute a left turn from Beverly Glen easterly onto Pico Boulevard but there is no evidence that she actually started a turn, unless it can be inferred from the positions of the cars as indicated on a diagram (Defendants' Exhibit A) coupled with defendant's statement that she extended her *"hand"* for a left turn after making the boulevard stop.

Neither car is shown to have been necessarily traveling at an excessive speed in the intersection, but there is substantial (though disputed) evidence that defendant failed to make a stop as required by law before entering the intersection (Vehicle Code, § 577). In this respect, although defendant said that she stopped and remained standing for two or three minutes, plaintiff testified that he observed the defendant's car from a time when it was about sixty feet back from the stop sign, that he expected it to stop, but that it continued on to the point of impact. Defendant testified that after entering the intersection she observed plaintiff's car approaching at a speed of thirty to thirty-five miles per hour, but that she proceeded straight ahead, in low gear, at ten miles per hour, without applying brakes, until the collision occurred. While she stated that her car moved only five or ten feet after she first observed plaintiff's car until they crashed, the jury may well have believed that she saw, or should have seen, plaintiff's car at a greater distance. Plaintiff's speed was fixed by other witnesses at twenty to twenty-five miles per hour. No sound signal was given by defendant. The plaintiff also fixed the point of impact as being north of the center line of Pico and *east* of the center line of Beverly Glen. The witness Trudeau testified that he saw defendant's car when it was fifteen feet north of the intersection, approximately at the stop sign, traveling fifteen miles per hour, and that it did not stop. He placed the point of impact at, or within ten feet easterly from, the center of the intersection. Police officer Durham found a mark on the street said to have been made by the bumper of plaintiff's car, and fixed the place of impact as three and one-half feet east of the center line of

Beverly Glen and eight feet north of the center line of Pico. It was stipulated that persons approaching the involved intersection had ''a clear visibility for five or six hundred feet back from either of those two streets.''

The foregoing recital of facts disposes of defendants' Point I; such evidence amply supports the implied finding of defendant's negligence and plaintiff's freedom from contributory negligence.

## II.
## INSTRUCTION TO JURY ON LAW GOVERNING LEFT TURN.

The trial court instructed the jury that ''Any signal of intention to turn right or left shall be given continuously during the last fifty feet traveled by the vehicle before turning.'' Such instruction accurately quoted the Vehicle Code, section 544 (b), and although on appropriate request defendants might well have been entitled to have had it specifically qualified with respect to the hypothesis of defendants that the boulevard stop was made at a place less than fifty feet from the beginning of a turn, no such request was made, and on the plaintiff's theory of the case, which negatives any stop and assumes an attempted left turn, the instruction was proper. In any event it does not appear reasonably possible that the jury was misled by the instruction as given. In the case of *Johns* v. *Mecchi* (1931), 116 Cal. App. 31 [2 Pac. (2d) 452], cited by appellant herein, the plaintiff appealed and sought a reversal of a judgment for the defendant therein on the ground that such defendant had not given the left turn signal continuously for fifty feet, *a stop having been made* about thirty-five feet from the point where the accident occurred. Obviously the affirmance of the judgment in that case on the ground that on the theory of the prevailing party *that a stop had been made* and hence the left turn signal was improper *before the stop* gives rise to no implication of error in giving the instruction in the case at bar, which was applicable on the theory of the prevailing party here that *no* stop had been made.

## III.

## NEW TRIAL ON ISSUE OF DAMAGES ONLY; MEANING OF ORDER.

Defendants' attack under this point is threefold. They contend in effect that the language used by the court in granting plaintiff's motion for new trial (1) is inadequate to limit

the retrial to the issue of damages only; (2) that it does not specify insufficiency of the evidence to justify the verdict as the ground of the order; and (3) if the order be interpreted to grant a new trial only as to the issue of damages on the ground of insufficiency of the evidence it was an abuse of discretion to so limit it.

(1) Language is but a means of conveying thought; the certainty of its meaning is but relative. If the language used in determining a motion is such as to identify with reasonable certainty the order which is made, such order, if otherwise tenable, will be given effect. Here the plaintiff's motion for new trial was predicated on a document headed "NOTICE OF INTENTION TO MOVE FOR NEW TRIAL (Upon the issue of damages, only)" and which expressly states that "plaintiff intends to and will move the above entitled court to vacate and set aside the verdict heretofore rendered in favor of plaintiff and against the defendants in the above entitled action, on the issue of damages alone, and to grant the plaintiff, Edwin F. Cox, a new trial on said issue upon the following grounds: I. Insufficiency of the evidence to justify the verdict." Section 659 of the Code of Civil Procedure provides that the "notice shall be deemed to be a motion for a new trial on all the grounds stated in the notice." As hereinabove noted, defendants' notice of intention to move for new trial was general in scope and multiple in grounds. By minute entry the court "ordered that plaintiff's motion for a new trial be granted upon the grounds of inadequate damages; that defendants' motion for a new trial be denied."

Since defendants' motion was denied, the only motion which could have been granted was plaintiff's, and the order granting it could be no more inclusive than such motion (*Quevedo* v. *Superior Court* (1933), 131 Cal. App. 698, 702 [21 Pac. (2d) 998]; *Tripcevich* v. *Compton* (1938), 25 Cal. App. (2d) 188, 190 [77 Pac. (2d) 286]). The specific reference (in the order) to the motion serves to emphasize applicability of the proposition recognized in the two last-cited cases that the order must be construed within the limits set up in the motion. (2) This proposition applies not only to determining the limits of the order but also to identifying the ground on which it is based. Since the motion was based solely on the ground of insufficiency of the evidence it could be granted on no other ground (*Polk* v. *Boggs* (1898), 122

Cal. 114, 117 [54 Pac. 536]) and the statement in the order
that it was based on "the grounds of inadequate damages,"
construed with the language of the motion, constitutes a spe-
cification that the legal ground was "insufficiency of the evi-
dence to justify the verdict" (see *Griffey* v. *Pacific Electric
Ry. Co.* (1922), 58 Cal. App. 509, 512 [209 Pac. 45]; *Lucerne
Country Club* v. *Beal* (1937), 21 Cal. App. (2d) 121, 126
[68 Pac. (2d) 408]; *Secreto* v. *Carlander* (1939), 35 Cal.
App. (2d) 361, 364 [95 Pac. (2d) 476]). ▮ Such order
for a new trial on the issue of damages only, on the ground
stated, was within the trial court's discretion (Code Civ.
Proc., sec. 657; *Sanford* v. *Wilcox* (1936), 13 Cal. App. (2d)
193, 194 [56 Pac. (2d) 548]).

▮ (3) While the evidence amply supports the conclu-
sion that the damages awarded were inadequate, we do not
find that it is such as to justify us in concluding, contrary to
the trial judge, that the jury *compromised the question of
negligence* by its inadequate award of damages. Such a con-
clusion on this record would be more speculative than infer-
ential. The verdict here was for $1,250 in response to plain-
tiff's claim for $450 doctors' bills, $361 hospital bill, and
general damages. The items for the doctors and the hospital
were not disputed, but the extent of the injuries was seriously
contested. The verdict not only awards recovery for all the
special damages but includes $439 for general damages. That
the general damage award is disproportionately small seems
obvious and its inadequacy is the basis for the new trial order.
But that merely because we regard the award as too low we
must also infer that jurors stultified themselves by bargaining
inadequate damages for unjustified liability is a *non sequitur*.

If such a conclusion is to be reached it must be supported
by further circumstances.

In the case of *Donnatin* v. *Union Hardware & Metal Co.*
(1918), 38 Cal. App. 8 [175 Pac. 26, 177 Pac. 845], the stated
doctrine of which is relied upon by defendants, at page 11
it is pointed out that "As shown by the evidence, there was
no contest as to the extent of plaintiff's injuries; hence the
real subject of the trial was the question of defendant's
alleged negligence, as to which there was no justifiable ver-
dict." (The verdict in that case was for $1.00.) In the
case before us there was substantial contest as to the extent
(permanence) of plaintiff's injuries. A medical expert for
plaintiff testified that on examination three weeks before the

trial he found plaintiff still suffering twenty-five per cent impairment of motion in his injured knee and that at least fifteen per cent impairment would be permanent, but defendants' expert said that more than three months before that date he found the plaintiff wholly recovered; also that plaintiff said he had been discharged from medical care approximately six months before the trial date. The conclusion which appears most reasonable to us from consideration of the entire record is that the jury correctly determined the issues of negligence and contributory negligence and that the granting of plaintiff's motion for a new trial solely on the issue of damages was within the discretion of the trial judge, who, as well as the jury, heard the evidence. Defendants suggest that (as asserted in the case of *Zeller* v. *Reid* (1938), 26 Cal. App. (2d) 421, 425-26 [79 Pac. (2d) 449]) the cases of *Donnatin* v. *Union Hardware & Metal Co.* (1918), *supra*; *Bencich* v. *Market Street Railway Co.* (1937), 20 Cal. App. (2d) 518 [67 Pac. (2d) 398]; and *Wallace* v. *Miller* (1938), 26 Cal. App. (2d) 55 [78 Pac. (2d) 745], are not necessarily inconsistent with *Tripcevich* v. *Compton* (1938), *supra*. Regardless of any question of harmony among these decisions, we believe that the case before us is more akin to the case last cited and to *Zeller* v. *Reid, supra*, than to the others. Certainly we find no factual basis impelling us to hold that the order as made constituted an abuse of discretion, and we do not interpret any of the cited cases as requiring such a holding on the record before us.

## IV.
## VALIDITY OF MINUTE ENTRY OF ORDER GRANTING NEW TRIAL ON GROUND OF INSUFFICIENCY OF THE EVIDENCE.

The decision of this point depends wholly on the question whether section 657 of the Code of Civil Procedure as amended in 1939 requires that an order granting a motion for new trial made solely on the ground of insufficiency of the evidence to justify the verdict or decision be inscribed on a piece of paper and deposited with the clerk otherwise than as a minute order is written and deposited with that officer; in other words, is an order on that ground, which would be valid if the paper on which it is written were deposited by the clerk in a folder, invalid if it is placed or kept by him in the minute book? We are satisfied that under a reasonable

interpretation of the law the order is equally efficacious in either case.

In order to determine the intention and purpose of the legislature in making the amendments of 1939 (to Code Civ. Proc., sec. 657) it is necessary to consider briefly the history of that portion of the section which, was amended. Prior to the year 1919 there was no requirement that an order granting a new trial specify the ground on which it was based and such an order, when general in terms, would be affirmed on appeal if sustainable on any ground stated in the motion (*Rahmel* v. *Rost* (1918), 178 Cal. 15 [171 Pac. 1068]). An order based on insufficiency of the evidence was sustainable if there was any appreciable conflict in the evidence (*Newman* v. *Overland Pacific Ry. Co.* (1901), 132 Cal. 73, 74 [64 Pac. 110]), and it was the practice for appellate courts to assume, unless precluded by the order or by absence of that ground from the motion, that insufficiency of the evidence was the ground (see 2 Cal. Jur. 892, and cases cited under note 13). The courts indulged this practice to the extent shown in *Newman* v. *Overland Pac. Ry. Co.* (1901), *supra,* where the minute order being in general terms, although the court filed a written "opinion" specifying a different ground, it was presumed that insufficiency of the evidence was the legal ground on which the general order was based. The court said, at page 75: "This rule of procedure is not affected by the fact that at the time of making the order the court files an opinion in support of its action, wherein it discusses one or more of the grounds presented. The order which is entered in the minutes is the only record of the court's action, and is to be measured by its terms, and not by the reasons which the court may give for it." Apparently in an effort to stop the practice illustrated by the last-cited case, the legislature in 1919 added a new paragraph to section 657 reading, "When a new trial is granted upon the ground of the insufficiency of the evidence to sustain the verdict, the order shall so specify; otherwise, on appeal from such order, it will be presumed that the order was not based upon that ground" (Stats. 1919, p. 142, chap. 100). In 1929 (Stats. 1929, p. 841, chap. 479) this paragraph was again amended so that (up to 1939) it read: "When a new trial is granted, on all or part of the issues, upon the ground of the insufficiency of the evidence to sustain the verdict, the order shall so

specify; otherwise, on appeal from such order it will be presumed that the order was not based upon that ground."

The amendments of 1939, with which we are particularly concerned, add to the same paragraph the words "or decision" after the word "verdict," to make the provisions applicable to trials *without* as well as to trials *with* a jury, apparently taking cognizance of the decision in *Gruben* v. *Leebrick & Fisher, Inc.* (1938), 32 Cal. App. (2d) (Supp.) 762 [84 Pac. (2d) 1078]; add, after the word "specify," the words "this in writing and shall be filed with the clerk within ten days after the motion is granted"; also add the word "conclusively" in the stated presumption, so that the material provisions as now cast, read: "When a new trial is granted, on all or part of the issues, upon the ground of the insufficiency of the evidence to sustain the verdict or decision, the order shall so specify this *in writing and shall be filed with the clerk* within ten days after the motion is granted; otherwise, on appeal from such order it will be *conclusively* presumed that the order was not based upon that ground." (Italics added.)

No court or seasoned member of the legal profession will doubt that the purpose of the legislature in enacting the above quoted amendments of 1939, other than to make the quoted requirements applicable to cases tried *without* as well as to cases tried *with* a jury, was to set up, in effect, a *statute of limitation* on the *time* within which a trial court can, either by original action or by *nunc pro tunc* order, specify *insufficiency of the evidence* as a ground for an order granting a new trial. The time within which a notice of intention to move for new trial may be filed is limited (Code Civ. Proc., sec. 659) as is the time within which the motion must be passed upon by the court (Code Civ. Proc., sec. 660), and it seems entirely logical, particularly in view of the broad discretion vested in the trial judge in passing on motions based upon insufficiency of the evidence, that there be a limitation on the time, after actual granting of the motion, within which the fact that this particular ground is a basis for the order, if such be the truth, actually shall be made a matter of record "in writing . . . filed with the clerk."

It may be inferred with confidence that the legislature, in order to accomplish its purpose, deemed it necessary to require both that the ground be specified in writing *and* placed of record with the clerk within the limited period because

it could be contemplated that records inevitably would appear before courts of appeal, declaring, by virtue of *nunc pro tunc* action subsequent to the ten-day period, that the trial court's records as originally inscribed failed to specify the mooted ground only through inadvertence, it having been truly a basis of the order (sustainable on no other ground)—and without the dual requirement, certainly such *nunc pro tunc* order, under a long line of cases, would prevail.

That the purpose of the legislature to establish such a limitation of time is attained equally well whether the entry "in writing . . . filed with the clerk" be in a folder in his official custody or in a minute book in his official custody, is obvious. If the paper, bearing a sufficient recital, is in the official custody of the clerk within the time limited, the object of the legislation has been accomplished.

That an order inscribed on a sheet of paper by direction of the court is an order *in writing* equally whether that sheet of paper be placed in a minute book or loose in a folder is apparent from the mere statement of the fact. That the word "order" used as a noun in the Code of Civil Procedure, by its very definition requires a writing, and that the legislature in originally providing for "motions" and "orders" generally, contemplated that an order in writing was an order in writing, of equal efficacy, whether made on a loose sheet of paper and deposited in a folder or inscribed on a page in a minute book, becomes apparent upon reading section 1003 of the Code of Civil Procedure: "Every direction of a court, judge, or justice, *made or entered* in writing, and not included in a judgment, is denominated an order. An application for an order is a motion." (Italics added.) ██ Regardless of section 657 of the Code of Civil Procedure it is fundamental that *all* orders of a court of record shall be recorded in writing.

In determining the intention of the legislature it seems of some significance that in making the amendments of 1939 it did *not* require that the order *be signed*. The legislature apparently took cognizance of court practices. There is probably no more well established court practice than that of determining new trial motions by minute entry. Had the legislature desired to ban that practice in whole or in part it would seem logical that specific language to that end should have been used. Particularly is this true with respect to a differentiation between orders to be entered in the minute-

book and orders to be "signed by the judge and filed" in view of the precise language used by the legislature in making that discrimination elsewhere. In section 1221 of the Probate Code it is stated that, "All orders and decrees of the court or judge must be entered at length in the minute-book of the court, or else signed by the judge and filed; but decrees of distribution must always be so entered at length." Here we find certainty of differentiation between and identification of the two methods of placing orders of record, and also an apparent recognition that *entry at length in the minutes is the more formal* and desirable method for publishing and preserving the highly important decree of distribution.

We should note also that the amendment does not require that the order be filed "by" the clerk; it says filed "with" him. To "file" a document originally meant to hang it on a string for preservation (16 Words and Phrases 531; *Holman* v. *Chevaillier's Admr.* (1855), 14 Tex. 337, 339), but the word now imports that the document shall be placed in the official custody of a proper person. "Filing a paper consists in presenting it at the proper office, and leaving it there, deposited with the papers in such office." (*Tregambo* v. *Comanche, etc., Mining Co.* (1881), 57 Cal. 501; *Hoyt* v. *Stark* (1901), 134 Cal. 178, 180 [66 Pac. 223, 86 Am. St. Rep. 246]; *Dillon* v. *Superior Court* (1914), 24 Cal. App. 760, 765 [142 Pac. 503].) In furtherance of the strict construction of the statute sought by defendants (appellants) it might be urged that to be filed "by" the clerk entailed placing of an endorsement on the filed paper and depositing it in a folder or "file." But that the words "filed *with* the clerk" are used contemporaneously in a much broader sense is evidenced by the highest judicial authority in this state. In *Bastajian* v. *Brown* (1941), 19 Cal. (2d) 209 [120 Pac. (2d) 9], we find on pages 210 and 213 the quoted words used to depict the mere placing of papers in the custody of a clerk, not to be *filed "by"* him but to be handed to the judge. Surely an order written on a piece of paper in the official custody of the clerk, by direction of the court, and in, or to be placed in, the court's minute-book, is as effectively "filed with the clerk" as is a paper temporarily in his possession for the purpose of handing it to the judge. A somewhat similar usage of the word "file" also occurs in *People* v. *Tomalty* (1910), 14 Cal. App. 224, 232 [111 Pac. 513], wherein the court says, "The account books of the treasurer, as such, are constructed in

the treasurer's office, the records are made in such office, but when made they become and are records of the office, and are then *on file* and on deposit in such office, and are in the official custody and keeping of the treasurer."

It ·can scarcely be argued with conviction that the paper bearing the order was not "filed *with* the clerk" merely because he and not the judge or a party acted as scrivener. There is nothing in the statute which precludes the clerk from performing his usual duties in the premises or which suggests that the validity of the order depends on whose hand writes it. Permissively, provision is made that, "The court may direct a party to prepare the order," but the very fact that this provision is expressly permissive and that there is no mandatory requirement as to preparation, service of a copy, or signing, suggests contemplation by the legislature that this order normally, like the majority of all orders, might be prepared by the clerk, in routine discharge of his duties at the direction of the judge. The fact that this permission is declared seems, upon this analysis, not persuasive that the legislature intended to ban minute orders upon the ground specified. In almost all cases in this jurisdiction (for exception as to decrees of distribution, see Probate Code, sec. 1221) it is discretionary with the trial judge whether orders granting or denying motions made in open court be written in the minute-book or on loose paper; under *either* procedure it is not uncommon practice for counsel to suggest or for the judge to request, that an attorney for a party prepare, or assist in preparing, the form of order. Forms of orders intended to be *signed by the judge* and filed otherwise than as minute orders are more likely to be the subject of preparation by counsel on direction of the judge, but this method is not exclusive; such forms of orders for signature are often prepared by the clerk. Likewise, forms of minute orders are more likely to be prepared by the clerk, but probably every trial lawyer of mature experience has had occasion many times, either on his own initiative or by request of the judge, to himself prepare the form of minute order to be entered in a case requiring some unusual technical exactitude. Such is precisely the case of an order granting a new trial on the ground of insufficiency of the evidence to justify the verdict or decision. It is a case, since the amendments of 1939, demanding some technical exactitude in preparation of the order,

but *not* requiring an order *signed* by the judge, and hence is exactly the type of case in which the trial judge, either on his own initiative or by request of counsel, might occasionally want to direct counsel to prepare the order for entry in the minute-book.

Our attention has been directed to no case in which a court of appellate jurisdiction has had presented to it the precise point which we must determine. We have discovered two cases, not discussed in the briefs, in which the amendments of 1939 (to Code Civ. Proc., sec. 657) which we are considering were before the District Court of Appeal and the Supreme Court, respectively (*Thomas* v. *Driscoll* (1940), 42 Cal. App. (2d) 23 [108 Pac. (2d) 43], and *Whitley* v. *Superior Court* (1941), 18 Cal. (2d) 75 [113 Pac. (2d) 449]), and some language is included in the decisions of those cases which, if it had been used when actually considering our problem, would probably determine it contrary to the conclusion we reach here. ▮▮ But it is a rule of construction that "a judicial opinion must be construed with reference to the facts on which it is based, the language used must be held as referring to the particular case, and read in the light of the circumstances under which it is used" (21 C. J. S. 409). Particularly is it true that incidental statements of conclusions not necessary to the decision are not to be regarded as authority (*People* v. *McAllister* (1940), 15 Cal. (2d) 519, 523 [102 Pac. (2d) 1072]; *Hills* v. *Superior Court* (1929), 207 Cal. 666, 670 [279 Pac. 805, 65 A. L. R. 266]). Neither the Thomas case nor the Whitley case involved a construction of the statute on the point we are considering.

In the Thomas case (*Thomas* v. *Driscoll* (1940), *supra*, 42 Cal. App. (2d) 23 [108 Pac. (2d) 43]) the court was concerned not at all with the validity of a minute order specifying insufficiency of the evidence as the sole ground of the order, entered in writing within ten days after oral granting of the motion; there was before it only the question of validity of a *nunc pro tunc order made after the expiration of the time limited.* The court itself makes the distinction when it says, at page 26, "There was no written order granting a new trial upon insufficiency of the evidence until the *nunc pro tunc* order of July 17th, five and one-half months after entry of the minute order." As to its conclusion we are entirely in accord with the statement on page 27 that, "If the court

could make a *nunc pro tunc* order in cases where the grounds are the insufficiency of the evidence five months after the granting of the motion for a new trial, it would thereby effectively abrogate the statute which emphatically proscribes such an order after the lapse of the time designated. . . . It was to prevent just such *entries* that the legislature must have intended by the amendment.'' (Italics added.)

The case of *Whitley* v. *Superior Court* (1941), *supra*, was an application for a writ of *certiorari* to annul two *nunc pro tunc* orders purporting to grant a motion for new trial on the ground of the insufficiency of the evidence to justify the verdict. The court itself states the problem before it as follows (p. 77) : ''The question for decision on this appeal, therefore, is whether these *nunc pro tunc* orders awarding a new trial on the ground of the insufficiency of the evidence are valid, since neither was made within ten days after the motion was granted or 'filed with the clerk.' '' On such question the court concluded, as stated on page 82, ''that the legislature by its amendment to section 657, Code of Civil Procedure, subdivision 7, intended to make it mandatory that a written order granting a new trial on the ground of the insufficiency of the evidence to sustain the verdict or decision be filed within ten days after the motion is granted or not at all, and that this time limitation applies to *nunc pro tunc* orders as well as to original orders made pursuant to this statutory provision.'' With that conclusion we are, of course, wholly in accord. There is, however, a statement on page 81 that, ''The entry of the minute order on May 28, 1940 [which specified insufficiency of the evidence as its ground], did not satisfy the requirement that a written order specifying the insufficiency of the evidence be filed within ten days after the motion is granted.'' Descriptive of this statement, so far as it appears to affect the case before us, is the language of the Supreme Court speaking through Mr. Justice Curtis in *Hills* v. *Superior Court* (1929), *supra*, page 670, ''It is quite evident that the question . . . was not before the court, and therefore that any language found in the opinion purporting to determine that question was not necessary for the decision of said appeal and must be regarded as *obiter dictum.*''

We have, in the case now before us, no *nunc pro tunc* order; we have here no attempted modification or correction of an order; we have here no failure to enter an order within

the time provided; we have here no neglect to specify that the order was made on the ground of insufficiency of the evidence to justify the verdict. We *do* have filed with the clerk a notice of intention to move for new trial "on the issue of damages alone" on the *sole ground* of insufficiency of the evidence to justify the verdict; we *do* have the presumption declared by section 659 of the Code of Civil Procedure that "said notice shall be deemed to be a motion for a new trial on all the grounds [the sole ground] stated in the notice"; we *do* have the order of the court stated *in writing* (Code Civ. Proc., sec. 1003), which order in writing was on deposit with the clerk as a part of the court's official records within ten days after the order was made, and which order in writing, construed with the notice of intention, does unmistakably specify "insufficiency of the evidence to justify the verdict" as its *sole ground.*

But because it is the sole ground and because the paper on which it is inscribed is kept by the clerk in the minute-book instead of in a folder, defendants (appellants) contend that an order in writing has not been filed with the clerk, that the conclusive presumption is operative, and that we must regard the order as groundless. If we adopt defendants' strict construction of the law this court will be in the abhorrent position of legally setting up and acting on the fiction of a hypothesis, the utter falsity of which appears of record; we shall be required to reverse an order for an error presumed directly contrary to the fact; all this by virtue of an unnecessarily narrow construction of language which is equally subject to a liberal and reasonable construction that gives effect to every word, attains the identical object with the same certainty, and does not impose the unconscionable presumption contrary to the facts of record. Under such circumstances, we deem it our plain duty to adopt the latter construction (see *Martin* v. *Gibson* (1941), 48 Cal. App. (2d) 449 [119 Pac. (2d) 1012]; Code Civ. Proc., secs. 4 and 1866; *In re LaBelle* (1940), 37 Cal. App. (2d) 32 [98 Pac. (2d) 778]).

Another consideration strongly supports the conclusion we have reached. The procedure of recording orders determining new trial motions by minute entry is as old as our judicial system. It is inevitable that a statute radically altering that procedure in one isolated application, making it void as to an

order granting a motion for new trial on one particular ground but leaving it with full vitality as to an order denying that same motion or granting it on any other ground, will constitute a trap for the unwary (see *People* v. *Bryant* (1929), 207 Cal. 450, 452 [278 Pac. 1025]) and produce a multiplicity of miscarriages of justice before its mischievous form can be remedied by further legislative action. It would be unjustifiable to place a strict and narrow construction on the statute to attain such an unfortunate result when the same enactment reasonably construed accomplishes every good object sought, but without the mischief.

The judgment and order are affirmed.

Wood (Parker), J., concurred.

SHINN, J., concurring.—I concur. I am in agreement with all that is said in the main opinion including the conclusion stated.

There is an additional reason which in my opinion requires us to hold that there was no deficiency in the proceedings for a new trial which prevents us from recognizing insufficiency of the evidence as the ground upon which the order granting a new trial was based. I am unable to see that the provision of section 657, Code of Civil Procedure, which requires that an order granting a new trial upon the ground of insufficiency of the evidence shall so state, has any application to an order granting such a motion which has been noticed and presented upon that ground alone.

By the several amendments of the section certain definite procedural improvements have been accomplished through the elimination of practices which had proven themselves to be unsatisfactory. These are pointed out in the main opinion and I shall refer to them but briefly. It was desired to remove all uncertainty in the consideration of appeals from orders granting new trials as to whether such orders had been granted upon the ground of insufficiency of the evidence. That objective was attempted to be reached by the amendment of 1919 and was accomplished by the amendment of 1929. The uncertainty that had theretofore existed arose from the failure to state in orders granting new trials whether insufficiency of the evidence was one of the grounds or the sole ground for the order. Of course there never was any uncertainty

in situations in which insufficiency of the evidence was·specified in the notice of intention as the sole ground of the motion, which is the one before us. The order and the notice of intention must be read together. The notice of intention is deemed to be the motion upon all grounds specified in the notice. (Code Civ. Proc., sec. 659.) The notice is the first step in the proceeding and is essential to give the court jurisdiction to grant a new trial, and to it the court must look for a statement of the grounds which may be considered and acted upon by the court in granting the motion. Where it appears that there was a notice specifying legal grounds it will not be presumed that the court granted the motion upon a ground not specified in the notice or upon no ground whatever. The same presumptions as to regularity of procedure apply to orders as apply to judgments or other judicial acts. (Code Civ. Proc., sec. 1963, subds. 15, 16; *Galvin* v. *Palmer* (1901), 134 Cal. 426 [66 Pac. 572].)

It is almost invariably the case that several grounds are stated in the notice, including insufficiency of the evidence, and it was due to this widely used practice that the amendments of 1919 and 1929 were considered necessary for the purpose of removing uncertainty as to the basis of the orders in such cases. The fact that it was not essential that corrective legislation be provided for those cases where no uncertainty existed does not necessarily limit the scope of the amendments but it does aid materially in ascertaining what the purpose and intention of the legislature were in amending the section. Where one construction of a statute will attribute to the legislature reasonable and purposeful motives and another will lead to absurd and unjust consequences which the legislature could not have reasonably or fairly intended to bring about, it is our duty to adopt the first construction if we can do so without exercising the forbidden legislative function. If we should hold that the amendments were intended to apply to the facts before us, where the sole ground of the motion was insufficiency of the evidence (laying aside for the moment the holding of the main opinion that the record shows full compliance), we would have to say that notwithstanding the indisputable fact that the motion was granted upon the sole ground of insufficiency of the evidence, it will be conclusively presumed that it was not. We would then have to reverse the order, not because of any uncertainty

or deficiency of the record to speak the truth, but because we would have decided that the legislature, through ignorance or indifference, had imposed upon the courts a wholly superfluous formality of procedure which not only bordered upon the absurd, but served no purpose, accomplished no improvement over established practices, either by the correction of existing evils or otherwise, substituted fiction for fact in the courts' records, multiplied instead of reducing the opportunities for clerical errors, and without reason or necessity unjustly deprived a litigant of a substantial right. I cannot believe that the legislature intended anything of the sort. Awareness of the fact that the legislative function has taken on a vastness of proportion and complexity hitherto unknown should restrain the courts from holding to too narrow a conception of their own powers of interpretation and should incline them to be as helpful as possible in forwarding the obvious purposes of remedial legislation.

These, in brief, are the reasons which have inclined me to the opinion that the requirement that the ground of insufficiency of the evidence must be stated in the order was not intended to apply to a case where such specification already appears in the record.

It seems unnecessary to cite or discuss the several rules of statutory construction which have application to such a situation. I know of none which under a fair application would require this court to reach a conclusion contrary to the one herein expressed. They all harmonize with the fundamental rule stated by Mr. Justice Field in *United States* v. *Kirby* (1869), 7 Wall. 482 [19 L. Ed. 278], that "General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of this character. The reason of the law, in such cases, should prevail over its letter." General terms only are before us for construction. The duty of recognizing a proper occasion for an exception to those general terms furnishes the reason for this separate concurrence.

The requirement as to making the order a matter of record within ten days after it is made, which of course can only be done in writing, as in the case of all orders, applies to the present case only to the extent that it places a limit of time upon the act of completing the record in the new trial pro-

ceeding. Too often that had been done under the former practice through the medium of *nunc pro tunc* orders made long after the time had elapsed for ruling upon the motion, the evil of which, as stated in the main opinion, led to the amendment of 1939. However, it means no more in cases of the class we are considering than that an order consisting of a direction of the judge to the clerk, if such could be called an order, cannot remain in the embryo state of a mere good intention for more than ten days. The order now before us was entered promptly, and had it been couched in general terms, without specifying insufficiency of the evidence, it would have been sufficient to comply with the requirement as to filing, as well as with the requirement for specification of the ground therefor, when read with the notice of intention.

Appellants' petition for a hearing by the Supreme Court was denied March 27, 1942.