Fred G. Hodges Bedding Company, Appellant, *v.*
Pennsylvania Labor Relations Board.

Argued January 8, 1957. Before JONES, C. J., BELL,
CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

*Geo. B. Balmer,* with him *Raymond C. Schlegel,
Charles M. Guthrie, Jr.,* and *Snyder, Balmer & Kersh-
ner,* for appellant.

*M. H. Goldstein,* with him *Darlington Hoopes,* and *John J. DiEnno, Jr.,* for intervenor-appellee.

*Oscar S. Bortner,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, and *Thomas D. McBride,* Attorney General, for Pennsylvania Labor Relations Board, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, April 22, 1957:

The Upholsterers' International Union of North America, A. F. of L., having formally notified the appellant herein, Fred G. Hodges Bedding Company, of Reading, Pa., that the Union represented a majority of the company's employees, requested that it be recognized as the bargaining representative of the employees. Counsel for the company responded that it would not recognize the Union in such capacity until it had been so certified by the National Labor Relations Board. Thereupon the Union filed with that Board a petition seeking certification. However, counsel for the company then advised the regional office of the National Labor Relations Board by letter that, in his opinion, the subject-matter was not within the jurisdiction of the National Board because of the latter's self-imposed limitations on its jurisdiction.[1] In con-

---

[1] See National Labor Relation Board's Press Release (R-449), dated July 15, 1954, 34 LRRM 75, 76, which recapitulated and compiled all new jurisdictional standards promulgated by the Board since 1950 and which contains, in presently material part, the following restriction on the Board's jurisdiction: "E. Jurisdiction over multistate enterprises, other than retail and service establishments, will be governed by the following tests: (1) To qualify, the plant involved must meet the outflow tests ($50,000 a year in direct outflow or $100,000 a year in goods furnished to an interstate company) or the inflow tests ($500,000 a year in purchases coming to it directly from outside the state where it is

sequence, the field examiner for the Board notified the Union of the company's challenge of the Board's jurisdiction. The Union thereupon withdrew its petition to the National Board and promptly filed a similar petition with the Pennsylvania Labor Relations Board.

At the hearing on the Union's petition before the trial examiner for the State Board, the company saw fit to challenge the jurisdiction of the State Board on the ground that, although the company was excluded from the jurisdictional ambit of the National Board because of the self-imposed restrictions on its jurisdiction, the State Board was nevertheless without jurisdiction of the petition for the reason that under the terms of the National Labor Relations Act the National Board had exclusive jurisdiction in the premises whether or not it chose to exercise it.

The secretary of the company testified at the hearing before the State Board relative to the dollar volume of the company's sales and purchases and the quantum of their respective interstate and intrastate components for the three-year period immediately preceding. This testimony was the basis of unexceptionable findings by the State Board which, summarized, show that, of the company's total sales ranging from $352,000 to $486,000 annually for the years specified, all but a negligible amount had been sold within the State while, of the company's purchases ranging from $218,000 to $270,000 for the same years, 70% to 85%, approximately, had been purchased in interstate commerce. Nonetheless, the State Board held that the company's business was "essentially . . . a local operation", that "Thus viewed, it is apparent that whatever business this employer engages in outside of the State of Penn-

---

located or $1,000,000 a year coming to it indirectly from outside the state)."

sylvania, is, in the final analysis, 'de minimis' " and that "this employer and its employes are not engaged in commerce and do not 'affect commerce' within the meaning of the National Act". On the basis of these conclusions, the State Board assumed jurisdiction of the petition, entered an order calling for an election by listed employees and, as a result of the election, certified the Union as the bargaining representative of all of the company's specified employees. On the company's petition for review of the State Board's certification order, the Court of Common Pleas of Berks County dismissed the petition and affirmed the decision of the State Board. This appeal by the company followed.

In the light of the unquestioned findings as to the yearly dollar volume of the company's "interstate inflow and outflow", it cannot be disputed that the company is engaged in interstate commerce. And, were it not for the National Labor Relations Board's self-imposed restrictions, the certification proceeding sought by the Union would be within the jurisdiction of the N.L.R.B.: see, e.g., *N.L.R.B. v. Suburban Lumber Co.*, 121 F. 2d 829, C.C.A. 3, cert. den., 314 U.S. 693. Many other Court of Appeals decisions to like effect could be cited. Such being the situation, it is the appellant's contention that the National Board's refusal to assert its jurisdiction because of its self-imposed jurisdictional standards does not operate to permit the State Labor Relations Board to exercise jurisdiction in the premises. The question thus raised is no longer an open one: see *P. S. Guss etc. v. Utah Labor Relations Board*, 353 U. S. 1, and companion cases, *Amalgamated Meat Cutters and Butcher Workmen of North America v. Fairlawn Meats, Inc.*, 353 U. S. 20, and *San Diego Building Trades Council v. Garmon*, 353 U. S. 26 (all handed down by the Supreme Court of the United States March 25, 1957).

In the *Guss* case, supra, Chief Justice WARREN, speaking for the court, stated the question involved to be "whether Congress, by vesting in the National Labor Relations Board jurisdiction over labor relations matters affecting interstate commerce, has completely displaced state power to deal with such matters where the Board has declined or obviously would decline to exercise its jurisdiction but has not ceded jurisdiction pursuant to the proviso to §10 (a) of the National Labor Relations Act." The proviso contained in Section 10 (a) of the National Labor Relations Act (61 Stat. 146, 29 U.S.C.A. §160 (a)) permits the National Board to allow State Labor Relations Boards to take final jurisdiction in cases that are borderline, so far as interstate commerce is concerned, provided the State statute conforms to the National policy.[2] The Supreme Court held that "the proviso to §10 (a) is the exclusive means whereby States may be enabled to act concerning the matters which Congress has entrusted to the National Labor Relations Board." The court recognized that the exercise of restrictive or selective jurisdiction by the National Board, coupled with concurrent denial of State jurisdiction, might well create "a

---

[2] Section 10 (a) provides: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided*, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation, except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith."

vast no-man's-land, subject to regulation by no agency or court" but was of the opinion that the Congressional desire for uniformity, as expressed in the Act, required that the exclusive method whereby a State may act in matters within the *statutory* jurisdiction of the National Board is by virtue of the jurisdiction ceded to the State agency by the National Board under Section 10 (a). No such cession of jurisdiction was present in the *Guss* case; and none is present here. The Supreme Court expressly refrained from passing upon "the validity of any particular declination of jurisdiction by the Board or any set of jurisdictional standards."

The *Amalgamated Meat Cutters* case, supra, which reviewed a decision by the Supreme Court of Ohio in an employer's suit to enjoin organizational picketing, the employer's sales were all intrastate, and out of approximately $900,000 of purchases, $100,000 worth were acquired directly from outside the State and approximately as much more were acquired indirectly in interstate commerce. The State Court held that the business was purely local in character and took jurisdiction to afford the relief sought. Chief Justice WARREN, in speaking for the Supreme Court, said,—"We do not agree that respondent's interstate purchases were so negligible that its business cannot be said to affect interstate commerce within the meaning of §2 (7) of the National Labor Relations Act. . . . Although the extent of respondent's interstate activity seems greater even than that in Building Trades Council v. Kinard Construction Co., 346 U.S. 933, we will assume that this is a case where it was obvious that the Board would decline jurisdiction. [Paragraph] On this view of the case, our decision in Guss v. Utah Labor Relations Board, ante, p. 1, controls. If the proviso to §10 (a) of the National Labor Relations

Act operates to exclude state labor boards from disputes within the National Board's jurisdiction in the absence of a cession agreement, it must also exclude state courts. See Garner v. Teamsters Union, 346 U.S. 485, 491."

The order of the court below is reversed and the proceeding dismissed at the cost of the intervenor-appellee.