[Civ. No. 22452.   Second Dist., Div. One.   Oct. 21, 1957.]

KLARA ADAM, Respondent, v. LOS ANGELES TRANSIT LINES (a Corporation), Appellant.

David S. Smith for Appellant.

Larwill & Wolfe for Respondent.

FOURT, J.—This is an appeal by defendant Los Angeles Transit Lines, hereinafter referred to as·the "Transit Lines," from a judgment arising out of the negligence of the railroad in the maintenance of a seat in one of its streetcars "and from that certain Order vacating" an order upon a motion for a new trial.

The facts established by the testimony and the evidence are substantially as follows: Plaintiff Klara Adam was a passenger on one of the transit lines' streetcars. She was seated in one of the regular seats when the bench part of the seat immediately in front of her fell from its proper and accustomed position or place and struck her on the leg, thereby causing injuries to that limb. The testimony was contradictory with reference to the falling of the seat or bench, some evidence being to the effect that a lady passenger ahead of the plaintiff in the streetcar caused the seat to fall by moving it, and some evidence being to the effect that the seat fell as a result of the railroad's carelessness in failing to maintain a proper and safe seat. At the time the bench so fell, the

streetcar was not engaged in any unusual movement and the motions thereof were normal to a Los Angeles streetcar. A Mrs. Pustau had been seated on the seat which fell, and just before the accident she had arisen therefrom.

The respondent requested instructions on the doctrine of res ipsa loquitur, which were given. The jury returned a verdict for $3,882.50, on November 9, 1956.

On Monday, December 17, 1956, the defendant made a motion for a judgment notwithstanding the verdict, and in the alternative, in the event such motion were denied, made a motion for a new trial. The trial court made the following statements from the bench at the conclusion of the first hearings on the motion:

"THE COURT: The motion for judgment notwithstanding the verdict is denied. I am satisfied that the verdict of the jury was supported by substantial evidence, even though there was a conflict. The motion for new trial is denied conditionally, the condition being that the plaintiff remit the balance over and above $2,000, the remittitur to be filed on or before Friday of this week, December 21; judgment without costs. Otherwise, the motion is granted. I think the amount of the verdict was substantially excessive, sufficient to warrant a conditional denial."

The record before use discloses no document or instrument which was signed by the judge at that time, nor at any other time, with reference to what was said from the bench on December 17, 1956. Apparently, a short time after the announcement by the judge of the rulings, "Mr. Wolfe, of counsel for the plaintiff, requested the Court to vacate his order and set the matter down for further hearing." That was done and the matter was set for a hearing on Friday, December 21, 1956. There was a minute entry made as of December 17, 1956, and entered December 19, 1956, as follows: "Larwill and Wolfe by Thomas S Bunn, Jr, appearing as attorney for the plaintiff and Ronald A Burford appearing for the defendant. Motions are argued. Motion for judgment notwithstanding the verdict is denied. Motion for new trial is denied on condition that the plaintiff remit the balance of judgment over $2,000, without costs, by December 21, 1956; otherwise, motion for new trial is granted. Later: Order re Motion for new trial is vacated. Motion is continued to December 21, 1956, at 9:45 A. M. for further argument. Counsel for plaintiff will give notice of hearing."

At the hearing on December 21, 1956, Wolfe, one of counsel for the plaintiff, pointed out that he was not present at the former hearing, and that he was of the impression that the amount of the special damages had been overlooked, and further pointed out that such special damages totalled exactly $882.50, which seemed to indicate that the jury had allowed $3,000 general damages and $882.50 as special damages. It was argued that under the circumstances the total amount, considering the pain and suffering of the plaintiff, was not excessive. The court then stated as follows:

"THE COURT: On the 17th I entered a conditional order, in effect reducing the amount of the verdict to $2,000. On reexamination of the record, I don't believe I gave the matter proper evaluation at that time. The record does show that both sides asked for a jury, on the one hand. The matter of past and future medical care of course was uncontradicted. I may have had the feeling that the general damages were somewhat too high in view of the history of the plaintiff, work history, following the accident. In reconsideration of the matter, I am going to let the verdict of the jury stand.

"The motion for new trial is denied. Notice waived, gentlemen?"

The ruling above set forth was put into a minute entry of December 21, 1956, and entered December 26, 1956, and read as follows:

"Hearing on Defendant's Motion for New Trial resumed from December 17; Larwill & Wolfe by Charles W. Wolfe and Thomas S. Bunn, Jr., appearing for the plaintiff and Ronald A. Burford appearing for the defendant. Motion is argued further. Motion for New Trial is denied. Notice Waived. 30 Day Stay of Execution is granted to the defendant."

The appellant contends that: (1) the res ipsa loquitur doctrine should not have been applied to this case; (2) the court had no jurisdiction to make its order on December 21, 1956; (3) the matter of insurance was improperly injected into the trial, and (4) the judge made a statement from the bench which was prejudicial to the appellant.

The conditions for the application of the doctrine of res ipsa loquitur are, generally, that the accident be of a kind which usually does not happen in the absence of some negligence, that the agency or instrumentality causing it must have been within the exclusive control of the defendant and that it must not have been due to any voluntary action or

neglect on the part of the plaintiff. (*Canevo* v. *Franklin General Benevolent Society,* 36 Cal.2d 301, 309 [223 P.2d 471]; *Raber* v. *Tumin,* 36 Cal.2d 654, 659 [226 P.2d 574]; *Seneris* v. *Haas,* 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124]; *Billeter* v. *Rhodes & Jamieson, Ltd.,* 104 Cal.App.2d 137, 147 [231 P.2d 93]; see also Prosser, *Res Ipsa in California,* 37 Cal.L.Rev. 183; Shain, *Res Ipsa Loquitur,* 17 So.Cal.L.Rev. 187; McCormick on Evidence, § 309, p. 643.)

There apparently is no contention in the instant case that the plaintiff did anything other than that which she was supposed to do, nor that there was a voluntary act on her part which in anywise had to do with the accident. It is certainly not customary nor usual for streetcar seats to fall apart with only normal usage. Without question, such things do not happen in the absence of negligence upon the part of someone. It was stipulated that the streetcar was "under the sole care, custody and control of the Los Angeles Transit Lines at the time of the accident." There is no apparent doubt that the seat in question did fall onto and against the leg of Mrs. Adam, causing the injuries complained of. Appellant asserts that the lady sitting ahead of Mrs. Adam in the streetcar caused the seat to fall upon her leg. There was testimony and evidence which the jury could, and undoubted did, accept as true which led them to the conclusion that the lady in the forward seat did not lift, push, raise nor have anything whatsoever to do with the seat which fell, excepting to sit down upon it in a normal fashion and later to get up from it as people ordinarily get up from a streetcar seat. The witness stated that she heard the noise of the seat falling, and that she had no other sensory perceptions of the seat falling.

The appellant brought into court a seat which was supposed to be similar to the seat in question, and apparently put on a demonstration to show the construction of the seat. During the demonstration the jury had an opportunity to observe the defendant's witness attempt, with difficulty, to remove the horizontal or bench part of the seat. It must be assumed, of course, that for the purposes of its demonstration, the transit lines brought into court a seat which was in proper working order. The difficulty with which defendant's witness removed the bench part of the seat could well have convinced the jury that a seat in like condition would not have fallen apart and onto the leg of plaintiff; that the seat

in the streetcar was defective, broken, or dangerously worn, and that the appellant had not met the degree of care required of it.

Section 2101 of the Civil Code provides as follows: ''A carrier of persons for reward is bound to provide vehicles safe and fit for the purposes to which they are put, and is not excused for default in this respect by any degree of care.''

Appellant must have anticipated that passengers would be getting up and down and in and out of the seats in the streetcar, and it would have been a most unsafe practice to maintain a seat in such a fashion that the simple arising of a person therefrom would cause the seat to collapse and fall upon the person sitting to the rear thereof.

An intervening act of a third person does not relieve a person of negligent conduct if at the time of such conduct he should have realized that the third person might so act. (*McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 299 [195 P.2d 783]; *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 218 [157 P.2d 372, 158 A.L.R. 872]; Rest., Torts, §§ 447-449.)

In order that a plaintiff be entitled to the benefit of the doctrine of res ipsa loquitur, he need not exclude every possibility that the injury was caused other than by defendant's negligence. (*Seneris* v. *Haas, supra*; *Nungaray* v. *Pleasant Valley Lima Bean Growers & Warehouse Assn.*, 142 Cal. App.2d 653 [300 P.2d 285]; Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 197-198.)

The research of counsel and our own independent search have produced no cases in California having to do with the application of the doctrine to seats on common carriers. There are, however, numerous cases in other jurisdictions which so apply the doctrine. (*Rosenbaum* v. *Union Ry. Co.*, 169 N.Y.S. 456; *Smith* v. *Blue Ridge Transportation Co.*, 172 Md. 42 [191 A. 66]; *Hall* v. *Redifer*, (Ohio) 79 N.E.2d 237; *Southeastern Greyhound Lines* v. *Callahan*, 244 Ala. 449 [13 So.2d 660]; *Colton* v. *Rhode Island Co.*, 40 R.I. 264 [100 A. 498].)

Appellant's next contention is that the court had no jurisdiction to make the order it did make on December 21, 1956, because the order of the 17th of December, 1956, had been entered, and therefore the judge could do nothing thereafter about the matter. As pointed out heretofore, the oral statement of the 17th of December was never reduced to writing and was never entered in the minutes as such. We have heretofore quoted what the minute entry did contain

and what the judge said from the bench with reference thereto.

Section 1003 of the Code of Civil Procedure provides as follows:

"Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order. An application for an order is a motion."

In *Kindig* v. *Palos Verdes Homes Assn.*, 33 Cal.App.2d 349, at page 355 [91 P.2d 645], the court held "An order is the direction of a court or Judge made or entered in writing and not included in a judgment." In *Miller* v. *Stein*, 145 Cal.App.2d 381 [302 P.2d 403], wherein the trial judge was involved in a situation similar to that in the instant case, the court said (pages 383-385):

"The basic question presented is whether, upon its own motion and without notice, the court could make a second order vacating its prior oral order before the entry of the first order in the official minutes."

. . . . . . . . . . . . .

". . . Unless otherwise required by statute, an order in writing becomes legally effective at the time it is signed and filed by the judge. (*Maxwell* v. *Perkins*, 116 Cal.App.2d 752, 756 [255 P.2d 10].)

"Although there exists authority to the contrary, the rule has been developed in the most recent cases that an oral order of the court is subject to change prior to its written entry in the official minutes of the court. (Citing cases.)

"In *Ex parte Monckros Von Vetsera, supra* [7 Cal.App. 136 (93 P. 1036)], the petitioner was before the court on a writ of habeas corpus. On October 15 the judge announced in open court that the prisoner was illegally detained and ordered his discharge. This verbal order was not reduced to writing nor entered in the minutes. On October 17, the court, in the absence of the petitioner, made and signed a written order vacating the prior order. The petitioner asserted before the reviewing court that the order of October 15 was a final adjudication and that the court below lost jurisdiction to subsequently enter any different order. In rejecting the contention that the oral order of the court was irrevocable, the court stated (p. 138): 'Until the judgment had been entered in the minutes of the court, or had been in some authentic manner reduced to writing, as by the judge signing a written order, it must be held that the judgment lay in the breast of the judge, and that the court had plenary power thereover.'

"In *People* v. *McAllister*, 15 Cal.2d 519 [102 P.2d 1072], the Supreme Court reaffirmed this rule, and quoted as follows from the case last cited: 'In the case at bar the order relied on by petitioner for his discharge never having been entered in the minutes of the court, was subject to be vacated and revised by the court, and having been thus vacated affords no warrant for his release from the imprisonment. . . .' (P. 525.) In the McAllister case, the court sentenced defendant to pay a fine in its morning session. Later that day, the judge ordered defendant to return, and revised his order by pronouncing the alternative sentence of time in jail upon failure to pay the fine levied. In *uphold* the court's action, the Supreme Court stated that, 'if the sentence pronounced has not been entered by the clerk in the minutes . . . then it is proper for the court to change the sentence originally pronounced.' (Pp. 526-527.) At page 527, the court, in pointing out that the clerk must enter his minutes within a reasonable time after orders are made, observed: 'It is not necessary for us to pass upon the question as to what is a reasonable time for the clerk to perform this duty as we are satisfied that in this case when the two acts of the court occurred on the same day, no duty was imposed upon its clerk to enter the first sentence of the court before adjournment of the court for that day.' "

The judge in the case before us, on the same day apparently, namely on the 17th of December, 1956, before anything had been entered in the minutes, superseded his oral pronouncement by another oral direction to continue the matter to a date certain for further hearing, namely, to the 21st of December, 1956.

In *Pacific Home* v. *County of Los Angeles*, 41 Cal.2d 855 [264 P.2d 544], the judge stated from the bench, "I will deny all motions." Afterwards, the judge entered a written order in the minutes vacating the findings of fact and conclusions of law and judgment ordering judgment for the defendants, directing the preparation of new findings, conclusions and judgment, and denying the motion for a new trial. It was contended that the judge had no jurisdiction to make the subsequent orders changing the terms of his original statements from the bench. The Supreme Court said, among other things (at p. 857): "There is no merit to this contention. The court's oral pronouncement was in the future tense and was never entered in the minutes. The formal written order which the court later signed was the only order

entered in the minutes. An order ruling on a motion for a new trial is ineffective unless filed with the clerk or entered in the minutes. (Code Civ. Proc., § 1003; *Jablon* v. *Henneberger,* 33 Cal.2d 773, 775 [205 P.2d 1] ; *Jackson* v. *Thompson,* 43 Cal.App.2d 150 [110 P.2d 470].) The effective date of an order denying a motion for a new trial is the date of the minute entry. (*Millsap* v. *Hooper,* 34 Cal.2d 192, 193 [208 P.2d 982].) The minute entry here was made while the court still retained jurisdiction.''

The California Law Revision Commission has considered some of the problems involved in this matter and has made a study and recommendation concerning them, which was submitted February 1, 1957. (See titles ''New Trial Orders'' and ''Possible Changes in the Law'' of the study made at the direction of said Commission by Professor Edward L. Barrett, Jr., of the School of Law, University of California, Berkeley; see also *Diaz* v. *Schultz,* 81 Cal.App.2d 328 [183 P.2d 717] ; *Cox* v. *Tyrone Power Enterprises,* 49 Cal.App.2d 383 [121 P.2d 829] ; *People* v. *Driggs,* 111 Cal.App. 42 [295 P. 51] ; *Brownell* v. *Superior Court,* 157 Cal. 703 [109 P. 91].)

■ The next contention of the appellant is that the matter of insurance was improperly injected into the case. At the time of the selection of the jury the following occurred in the questioning of a prospective juror:

''MR. BUNN: What is your occupation?

''MRS. LIND: Retired teacher, Los Angeles Schools.

''MR. BUNN: Have you ever been in any other occupation?

''MRS. LIND: No.

''MR. BUNN: What is your husband's occupation?

''MRS. LIND: Retired lumber salesman.

''MR. BUNN: Has any member of your immediate family ever worked in the claims adjusting business?

''MRS. LIND: No.

''MR. BUNN: Has any member of your immediate family ever worked for the Los Angeles Transit Lines or any other public carrier?

''MRS. LIND: No.

''MR. BUNN: Pass for cause.

''MR. BURFORD: No questions from the defendant. No peremptory challenge. At this time, may I ask the Court to explain to the jury that there is no insurance involved? I believe this continued questioning carries innuendo to that effect.

"THE COURT: There is no insurance involved in this case."

Later on, when a doctor was being examined by plaintiff's counsel, the following occurred:

"Q. Now, Doctor, let's go back again to the examination that you made of Mrs. Adam's leg. Will you describe the size as near as you can of this injured area.

"A. I have a report here that at that time— I mean a copy of the report that I made to the insurance company, and at that time I recall that it was described as approximately 5 x 7½ centimeters, which would be equal to approximately 3 x 4 inches in diameter, all the way around.

"MR. BURFORD: Your Honor, I hate to interrupt. It may not be too important. I should like to have that portion struck that he mailed the report to the insurance company. Here the defendant is the Los Angeles Transit Lines, and I am the attorney for the Los Angeles Transit Lines, and there is no insurance company involved whatsoever.

"THE COURT: The jury has been advised that there is no insurance company. Go ahead."

We do not believe that the receiving of any such testimony, under the circumstances, constituted prejudicial error. The court told the jury in substance, in the first instance, that there was no insurance involved; counsel for the appellant stated at the time of the question that there was no insurance company involved, and the court again called attention to the fact that he had advised the jury that there was no insurance company involved.

■ The last contention of the appellant is that during the latter part of the giving of the instructions to the jury, the judge improperly stopped and made the inquiry, "Do you wish me to give the instruction on loss of earnings?" Counsel for the respondent answered, "No." The respondent had, in her complaint, alleged loss of earnings and some evidence had been offered on the question. In the judge's chambers, during a discussion thereof, respondent's counsel indicated that the respondent would drop any claim therefor. A jury instruction had been requested on loss of earnings before the respondent had waived that portion of her claim. The judge simply asked the question, at the time of the giving of the instruction, whether that particular instruction should or should not be given. We fail to see how the situation before us is anything like the facts in *Sanguinetti* v. *Moore Dry Dock Co.*, 36 Cal.2d 812 [228 P.2d 557], cited by appellant. It would appear that if there was any prejudice in the matter,

it was against the respondent, because she, in the presence of the jury, in answer to a general question put by the court, had, for all intents and purposes, waived a part of her original claim.  Furthermore, the jury was fully instructed to disregard any comments of the judge.  (BAJI No. 5—Jury not to take a cue from judge.)

We conclude that there was ample evidence to support the verdict of the jury and that the instructions on res ipsa loquitur were properly given.

We conclude further that the oral order, so to speak, of December 17, 1956, was not a final order, and therefore was subject to change by the court, and that the court had jurisdiction to make the order of December 21, 1956, denying appellant's motion for a new trial without conditions.

Finally, we conclude that there is no prejudicial error in the record.

The judgment and order vacating order granting motion for new trial are, and each is affirmed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.