[Civ. No. 240.   Fifth Dist.   Sept. 18, 1963.]

EXPLORATION DRILLING COMPANY, Plaintiff and Appellant, v. HEAVY TRANSPORT, INC. et al., Defendants and Respondents.

398

Conron, Heard, James & Hamilton and Calvin H. Conron, Jr., for Plaintiff and Appellant.

Mack, Bianco, King, Eyherabide, Means & Cooney, Henry C. Mack and Robert Anspach for Defendants and Respondents.

CONLEY, P. J.—The plaintiff sued the defendant and its driver, Clyde Fenwick, for damages by fire to a double drum

portable drilling unit mounted upon a semitrailer which was being hauled from a point near Camarillo in Ventura County to a location near Delano in Kern County. By stipulation of the parties, the total amount of plaintiff's damage by fire and the resultant loss of use was $16,754.61. The jury brought in a unanimous verdict for the defendants. Appellant contends that the court erred in refusing to give certain instructions requested by it and particularly on the subject of res ipsa loquitur.

Clyde Fenwick was an experienced driver, having worked as as such for 11 years; he and Charles Buniger, another driver of Heavy Transport, Inc., took tractors to Camarillo, and there picked up their loads. Mr. Fenwick was assigned to the transportation of the portable drilling unit mounted on a semitrailer, which had been under the care and in the sole possession of the plaintiff; it is not contended by plaintiff that defendants owed any duty of inspection of the vehicle preliminarily to hauling except as to tire inflation and brakes. The tractor operated by Fenwick was equipped with air hoses to operate the trailer brakes; the semitrailer had two axles with four eleven hundred twenty tires on each axle. Fenwick testified that after hooking his tractor to the semitrailer he tested the brakes and that they appeared to be normal; he also tested the tires by striking each of them with a ball peen hammer; by listening to the sound, he decided that they were properly inflated.

Mr. Fenwick testified as follows:

"Q. Did you check the air in the tires on the semitrailer before leaving Camarillo? A. No, sir.

"Q. Did you make any inspection of the tires to ascertain whether or not they were properly inflated? A. We kick the tires with a hammer or pipe and if they are soft they sound like a pumpkin. All of these were up.

"Q. Did you use any sort of air gauge? A. No, sir.

"Q. You just gave them the pumpkin test? A. That is right, sir."

He proceeded easterly from Camarillo and entering Highway 99 drove northerly on the ridge route toward his destination.

He testified that he again tested his brakes and inspected the tires at the State Inspection Station at the top of the Grapevine hill and found that they were in good condition. He said that he then proceeded on the 6 per cent downgrade

at a speed of from 5 to 8 miles per hour, which was well within the maximum permissible truck speed in that area of 20 miles per hour. The combined gross weight of plaintiff's trailer and defendant's tractor was estimated to be from 87,000 to 90,000 pounds. About a mile down from the top of the Grapevine he noticed in his mirror that a small amount of smoke was coming from the rear of the trailer, but this did not alarm him, because, as he testified, heavy equipment almost always "smokes" coming down the Grapevine hill. The witness Buniger, who was following Fenwick down the grade and who was driving a tractor-trailer unit, also noticed the smoke; he said it was coming from a left rear wheel of the trailer; but he said also that he was not alarmed because by years of experience he knew that all heavy equipment, including his own at the time, smoked on this downgrade due to the necessary application of the brakes.

At the bottom of the Grapevine, where the maximum permissible speed on the four-lane highway was 50 miles per hour, Fenwick gradually increased his speed to not more than 48 miles per hour. Normally, with no further application of brakes the smoke should have stopped, but it persisted, and at a point 6 or 7 miles northerly from the bottom of the Grapevine, the smoke had so increased that Buniger signaled to Fenwick by blinking his lights, and Fenwick drove the equipment to the side of the road and stopped. Both drivers testified that at that time the fire was located exclusively at the left rear axle of the trailer around the bearing and drum. None of the tires was then on fire, and all of them were inflated. By using fire extinguishers and enlisting the aid of the county fire department, the drivers were finally able to control and extinguish the fire, not, however, before the trailer and equipment were seriously damaged.

Two distinct theories of causation of the fire were developed by the evidence. The plaintiff called to the stand one Francis Lee, who qualified as an expert witness. He testified that on the morning after the casualty he examined the wheel assemblies on plaintiff's trailer and found that they were not defective in any way except that all of the grease seals on the wheels and axles had been burned, and some of the wheel bearings were blue, which would indicate that they had been through a fire. Lee's examination of the mechanism occurred after lubrication of the wheel bearings following the fire and

after the vehicle had been driven to the shop where he was employed in Bakersfield. In answer to a question as to the cause of the fire Lee testified, "It is my opinion that the tires were ignited from speed, number one, or under-inflation on one or or more tires, or a combination of both."

If the jury believed the evidence of Mr. Lee and determined that the cause of the fire was solely as testified to by him, the doctrine of res ipsa loquitur would apply. But there was also evidence that the cause of the fire was negligence on the part of the plaintiff in not properly inspecting and servicing the left semitrailer wheels and bearings prior to the commencement of transportation by the defendants; the record disclosed that there had been a fire on a recent prior occasion centering about one of the left rear wheels of the semitrailer and that this wheel had not been taken off by the plaintiff and inspected, lubricated or repaired. James Ward, a mechanic employed at the time by the defendant, inspected plaintiff's trailer wheels at the scene of the fire before the removal of the equipment to the shop in Bakersfield; he testified that the inside bearing on the left rear wheel of plaintiff's trailer did not show any evidence of lubrication and that it had turned blue; the outside bearing on the left rear wheel and all of the other wheel bearings on plaintiff's trailer did have lubrication and had not turned blue.

The witnesses Buniger for defendants and Pittman for plaintiff were also present when Ward inspected the wheel bearings. Buniger testified that the inside bearings on the left rear wheel of the trailer were blue and that they did not have any lubrication. Pittman, an employee of plaintiff, testified that there was evidence of lubrication of all of the bearings, but on cross-examination he admitted that his inspection of the bearings was "casual" and that Ward's inspection was more thorough.

The defendants' witness Frank Hornkohl, an experienced chemical engineer, testified that he had examined plaintiff's trailer after the fire and that he found evidence that an oil base mud and other types of oil-coated rotary mud had been all over the rear of the vehicle. Buniger also testified that the trailer was covered with oil and waste material in the nature of oil-base mud. In rebuttal, Pittman stated that plaintiff's trailer had never been at a location where oil-base mud had been used, and said also that the trailer had been cleaned below the platform just prior to its departure from

Camarillo. Incidentally, Pittman admitted that plaintiff was in sole control of its trailer at Camarillo and that it did not inspect the wheel bearings after the previous fire of February 23, 1960, which originated at one of the left rear wheels of the vehicle.

The record thus establishes a situation in which the application of the res ipsa loquitur doctrine would depend on which facts the jury believed. If the alleged acts and omissions of the plaintiff were eliminated as a proximate cause of the fire the doctrine of res ipsa loquitur would apply. But if the evidence of the alleged failure on the part of the plaintiff to take proper care of its equipment by inspection, lubrication and repair should be found by the jury to have been a proximate cause of the fire, the doctrine of res ipsa loquitur would obviously not apply. Certainly, the doctrine is not applicable as a matter of law. *(Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 158-159 [323 P.2d 391]; *Phillips* v. *Noble,* 50 Cal.2d 163, 167 [323 P.2d 385].) Res ipsa loquitur would be applicable only if the jury should reject in its entirety the theory advanced by defendants that a causative factor was the plaintiff's failure to inspect, lubricate and repair the left rear wheel of the semitrailer before it was turned over to the defendants for transportation.

As stated by Prosser on Torts (2d ed. 1955) section 42, page 199, the necessary prerequisites for the application of res ipsa loquitur are:

"a. The accident is of a kind which ordinarily does not occur in the absence of someone's negligence, and

"b. The apparent cause of the accident is such that the defendant would be responsible for any negligence connected with it, and

"c. The possibility of contributing conduct which would make the plaintiff responsible is eliminated."

In this case, requirement (a.) was established under the theories of both parties; each side accuses the other of negligence. If plaintiff's theory of the origin of the fire were upheld by the jury, the defendants would be responsible for any negligence connected with the happening, unless they should prove that they were free from fault; but if the jury accepted the contention that the fire started as defendants contended, requirements (b.) and (c.) would not be complied with, and res ipsa loquitur would not apply.

The doctrine is not applicable unless a plaintiff estab-

lishes that it was more probable than not that a defendant's negligence caused the casualty (*Di Mare* v. *Cresci*, 58 Cal.2d 292, 299 [23 Cal.Rptr. 772, 373 P.2d 860]; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 443 [247 P.2d 344]). ▮ If an accident might have been caused by one of several equally probable causes for one of which a defendant is not responsible, res ipsa loquitur is inapplicable. (*Nelson* v. *Douglas Pedlow, Inc.*, 130 Cal.App.2d 780, 784 [279 P.2d 823]; *Hogan* v. *Miller*, 153 Cal.App.2d 107, 115 [314 P.2d 230]; *Brocato* v. *Standard Oil Co.*, 164 Cal.App.2d 749, 756 [331 P.2d 111]; *La Porte* v. *Houston*, 33 Cal.2d 167, 170 [199 P.2d 665].)

▮ It is often said that in order to invoke the doctrine the instrumentality involved must be under the sole control of a defendant. (*Barrera* v. *De La Torre*, 48 Cal.2d 166, 169 [308 P.2d 724]; *Seneris* v. *Haas*, 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124].) Here there is no question but that the tractor with trailer attached was at the time of the fire physically in charge of the defendants. But when mention is made of the control of the instrumentality, that statement may properly refer to control at the time of the negligent act or omission rather than at the time of the accident (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [150 P.2d 436]; *Tallerico* v. *Labor Temple Assn.*, 181 Cal. App.2d 15, 18 [4 Cal.Rptr. 880]; *Sloboden* v. *Time Oil Co.*, 145 Cal.App.2d 197 [302 P.2d 34]; 36 Cal.Jur.2d, Negligence, § 316, p. 45) or to the right of control rather than actual control (*Ybarra* v. *Spangard*, 25 Cal.2d 486, 493 [154 P.2d 687, 162 A.L.R. 1258]).

▮ Is the judge or the jury charged with deciding whether the elements which permit the application of the res ipsa loquitur doctrine are present? Under the rule formerly in effect it was the duty of the trial judge to determine whether the condition of the evidence authorized the application of the doctrine. But the rule has been modified in this state to require that when there is conflicting evidence with respect to the existence of essential prerequisites for the application of the doctrine, the jury itself must preliminarily decide from the evidence whether there is a proper basis for the rule; and, therefore, the court must tell the jury that the doctrine applies only if the jury should so find under the facts. *Seneris* v. *Haas, supra*, 45 Cal.2d 811, 826-827, holds:

"In *Baker* v. *B. F. Goodrich Co.*, 115 Cal.App.2d 221, 229 [252 P.2d 24], it was said: 'Where the evidence is conflicting

or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present. (*Roberts* v. *Bank of America,* 97 Cal. App.2d 133, 137 [217 P.2d 129].)' (*Barham* v. *Widing,* 210 Cal. 206 [291 P. 173]; *Moore* v. *Belt,* 34 Cal.2d 525 [212 P.2d 509].) The conclusion that negligence is the most likely explanation of the accident, or injury, is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities (Res Ipsa Loquitur in California, Prosser, 37 Cal.L.Rev. 183, 194-195). The inference of negligence is not required to be an exclusive or compelling one. It is enough that the court cannot say that reasonable men could not draw it. (*Bauer* v. *Otis,* 133 Cal.App.2d 439, 443 [284 P.2d 133].) The existence of the conditions upon which the operation of the doctrine is to be predicated is a question of fact and the right of the jury to find those facts must be carefully preserved. (*Black* v. *Partridge,* 115 Cal.App.2d 639, 646 [252 P.2d 760]; *Rose* v. *Melody Lane,* 39 Cal.2d 481 [247 P.2d 335]; *Knell* v. *Morris,* 39 Cal.2d 450 [247 P.2d 352]; *Milias* v. *Wheeler Hospital,* 109 Cal.App.2d 759 [241 P.2d 684].) We conclude, therefore, that plaintiffs' evidence was sufficient to submit to the jury, under proper instructions, the applicability of the rule of res ipsa loquitur.''

In *Danner* v. *Atkins,* 47 Cal.2d 327, 331 [303 P.2d 724], the Supreme Court said:

''It is ordinarily a question for the fact finder, first, whether facts which give rise to the res ipsa loquitur inference of negligence actually exist and, second, if the inference arises, whether it prevails or is overcome.''

*Kite* v. *Coastal Oil Co.,* 162 Cal.App.2d 336, 344 [328 P.2d 45], points out that it is only where no issue of fact is present as to the existence of the conditions that require the doctrine of res ipsa loquitur that the court may direct the jury to draw the inference, and the opinion continues:

''If the existence of any condition is one of fact it is the province of the jury to determine whether the inference of negligence should be drawn from the facts proved. (Code Civ. Proc., § 1958.)''

(See also *Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 503 [15 Cal.Rptr. 161, 364 P.2d 337] ; *Guerra* v. *Handlery Hotels, Inc.,* 53 Cal.2d 266, 271 [1 Cal.Rptr. 330, 347 P.2d 674] ; *Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432, 436 [260 P.2d 63] ; *Valentine* v. *Kaiser Foundation Hospitals,* 194 Cal.App.2d 282, 286-287 [15 Cal.Rptr. 26] ; *Guerrero* v. *Westgate Lumber Co.,* 164 Cal.App.2d 612, 617 [331 P.2d 107] ; *Guerrero* v. *Brown's Lumber Co.,* 196 Cal.App.2d 530, 533 [16 Cal.Rptr. 628] ; *Mayers* v. *Litow,* 154 Cal.App.2d 413, 420 [316 P.2d 351] ; *Milias* v. *Wheeler Hospital,* 109 Cal. App.2d 759, 764 [241 P.2d 684] ; *Tallerico* v. *Labor Temple Assn., supra,* 181 Cal.App.2d 15, 18-20; Prosser, *Res Ipsa Loquitur in California,* 37 Cal.L.Rev. 183, 194-195.)

Appellant submitted three res ipsa loquitur instructions, all of which the court refused. They are identical with instruction number 206, revised, BAJI (1962 Pocket Parts, pp. 30-31) instruction number 206a, revised, BAJI (1962 Pocket Parts, p.32) and 206b, BAJI (p. 639). ▮ Instruction 206b, BAJI, completely omitted any qualification by reason of the plea of contributory negligence, and it was therefore properly refused. (*Kite* v. *Coastal Oil Co., supra,* 162 Cal.App.2d 336, 344-345.)

▮ Instruction number 206a (BAJI, revised) as proposed (to be followed by BAJI 206) reads as follows:

"One of the questions for you to decide in this case is whether the accident (injury) involved occurred under the following circumstances:

"First, that it is the kind of accident (injury) which ordinarily does not occur in the absence of someone's negligence;

"Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant (originally, and which was not mishandled or otherwise changed after defendant relinquished control) ; and

"Third, that the accident (injury) was not due to any voluntary action or contribution on the part of the plaintiff.

"If, and only in the event that you should find all these conditions to exist, you are instructed as follows."

Respondents concede on pages 20 and 21 of their reply brief:

"It is obvious that this is one of those cases, therefore, where the doctrine of res ipsa loquitur *depends on which set of facts the jury found to be true.*

"In these circumstances, it has been held by the Supreme Court on several occasions that the jury should have been instructed that 'in the event that' they found one set of facts to be true, that the doctrine was applicable, but if the jury found another set of facts to be true, the doctrine was not applicable."

While not as pointed as it might have been with reference to the specific facts of this case, still the proposed instruction is proper both abstractly and in substance. The failure to excise the word "injury," twice repeated in the instruction, while technically erroneous *(Shaw* v. *Pacific Greyhound Lines, supra,* 50 Cal.2d 153, 158-159), is such an incidental omission of duty on the part of counsel that we will not hold that the appellant lost its right to make its point on appeal through a failure to run a pen line through the word. The trial court should have given this instruction as a preliminary to giving instruction BAJI 206, and we cannot say that the result would not have been different if it had been given to the jury.

Respondents, however, contend that the instruction was properly refused because, they say, they completely rebutted any proof that the driver and his employer were negligent by "uncontradicted evidence." They point out that the indirect evidence involved under a res ipsa loquitur theory is an inference rather than a presumption *(Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682, 688 [268 P.2d 1041]) and that it may therefore be entirely dispelled ". . . as a matter of law when it is rebutted by clear, positive and uncontradicted evidence which is not open to doubt, even though such evidence is produced by the opposite side." *(Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal.2d 64, 70 [77 P.2d 1059].)

The Supreme Court said in *Rose* v. *Melody Lane,* 39 Cal.2d 481, 487 [247 P.2d 335]:

"When res ipsa loquitur is applicable, as it is here, an inference of defendant's negligence may be drawn. On appeal that inference is sufficient to sustain a verdict against defendant unless it is overcome by plaintiff's own evidence [citing authorities] or unless it is conclusively rebutted by evidence that is 'clear, positive, uncontradicted, and of such a nature that it cannot rationally be disbelieved.'"

(See also *Leonard* v. *Watsonville Community Hospital,* 47 Cal.2d 509 [305 P.2d 36]; *Leet* v. *Union Pacific Railroad Co.,* 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008].)

██ Respondents observe that the evidence of the defense witnesses, Fenwick and Buniger, relative to tire inflation and speed is not specifically contradicted, and they argue that such evidence completely dispels the inference of negligence which would arise under the doctrine of res ipsa loquitur. Fenwick testified that the air pressure of the tires was satisfactory when he tested them at Camarillo and at the inspection station at Lebec. But they might have been properly inflated in his opinion, based on their sound when struck, and yet not adequately inflated from an objective standpoint. He did not use a gauge and therefore could not say what the pressure actually was according to a standard scale. Similarly, there was no necessarily conclusive proof that the speed was such as not to cause a fire under the circumstances. Plaintiff's witness Lee had not only designed the semitrailer, but he examined it carefully on the day following the fire; he was an experienced engineer and knew the details of the particular piece of equipment which was involved, the design of the semitrailer and what effect fires would have upon its mechanism. He gave it as his opinion after closely examining the axles, hubs, wheels and bearings that the fire was due either to underinflation of one or more of the tires or excessive speed, or both. This evidence raised the inference that either the tires were improperly inflated or that the speed was excessive in view of the load and the grade. It would scarcely be proper for this court to hold as a matter of law that the testimony of the defense witnesses must be accepted as gospel truth by a jury, merely because such witnesses were the only ones who knew what had been done before the fire; a party to litigation, theoretically, always has an axe to grind; Clyde Fenwick was being sued for substantial damages, and his reputation as a safe and careful truck driver was involved; he thus had possible motives to protect himself; and it was for the jury to decide whether he was accurate and truthful in his testimony.

We hold, contrary to the arguments of respondents, that it was reversible error not to give the contingent instruction on res ipsa loquitur.

██ The only other point urged by appellant is that the court erred by giving the following instruction proposed by the plaintiff itself:

"The mere fact that an accident happened, considered alone, does not give rise to a legal inference that it was

caused by negligence or that any party to this action was negligent.''

If it was erroneous to give the instruction, plaintiff cannot complain, for it invited the error. (4 Cal.Jur.2d, Appeal and Error, § 557, p. 423.) If, at the retrial, the jury should find that res ipsa loquitur applies, the instruction in its present form might be thought to be misleading *(Shaw* v. *Pacific Greyhound Lines, supra,* 50 Cal.2d 153, 158; *Guerra* v. *Handlery Hotels, Inc., supra,* 53 Cal.2d 266, 271-273); it would be wiser not to give it, or at least to modify it by specific reference to the possible application of the res ipsa loquitur doctrine.

The judgment is reversed.

Stone, J., concurred.

A petition for a rehearing was denied October 11, 1963, and respondents' petition for a hearing by the Supreme Court was denied November 13, 1963.